**Ollie L. FRASIER, Plaintiff,**

v.

**Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.**

**Civ. A. No. 69–259.**

United States District Court,
N. D. Alabama,
Middle Division.

April 6, 1970.

Charles Tyler Clark, Johnston & Shores, Birmingham, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., Northern District of Alabama, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

ALLGOOD, District Judge.

The plaintiff, Ollie L. Frasier, filed an application for disabled widow's insurance benefits on January 22, 1968, at age 54.

The Bureau of Disability Insurance of the Social Security Administration denied this application, after the Alabama State Agency, upon evaluation of the evidence by a physician and a disability examiner, had found that Mrs. Frasier was not under a disability.

The plaintiff, represented by counsel, then appeared before a hearing examiner who considered the case *de novo*. On February 26, 1969, the hearing examiner found that the plaintiff was not under a disability that would qualify her for the benefits for which she applied on January 22, 1968.

The Appeals Council denied plaintiff's request for review on April 17, 1969, thereby causing the decision of the hearing examiner to become the "final decision" of the Secretary of Health, Education and Welfare.

Mrs. Frasier was born on April 5, 1912, and received a seventh-grade education. She was a housewife and had also done some farm work, and had worked as a store clerk and cashier for her son who operated a grocery store. This was after her husband's death, and the employment lasted only about six months. Mrs. Frasier testified that she had a "nervous breakdown or something and had to quit," and that Dr. Clemons "told her she would have to quit work." (Tr. 42).

In her application for disabled widow's insurance benefits, the plaintiff alleged inability to work beginning in December, 1966, due to high blood pressure, nervous condition and arthritis. Mrs. Fra-

sier stated that she had dizzy spells and severe daily headaches which affected her vision and ability to walk (Tr. 70); that when she is working she becomes very weak and nervous. She stated that she took medicine for nerves and high blood pressure. Her hands and arms swell from arthritis causing her to be unable to lift anything. She could not perform all of her housework and could go out only occasionally to shop and go to church. (Tr. 71). Before the hearing examiner, plaintiff testified that Dr. Simpson had told her that she had an "ulcer in her stomach, high blood pressure, arthritis, and a large ulcer in her colon and nervous condition, heart trouble." (Tr. 39–40).

Section 223(d) (2) (B) of the Social Security Act, 42 U.S.C. § 423(d) (2) (B), defines disability as applied to widows as follows:

"(B) A widow, surviving divorced wife, or widower shall not be determined to be under a disability (for purposes of section 202(e) or (f) of this title) unless his or her physical or mental impairment or impairments are of a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity."

Section 223(d) (3), 42 U.S.C. § 423 (d) (3), also as added to the Act by Section 158(b) of Public Law 90–248 provides:

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results for anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

Section 223(d) (5) of the Act, 42 U.S.C. § 423(d) (5) provides that:

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

Congress apparently intended that Section 423(d) (2) (B) be more strictly applied than Section 423 in establishing disability, in that the individual must be precluded under the former section from engaging in any gainful activity, while under the latter section one must be unable to engage in any substantial gainful activity. (Hendrix v. Finch, 310 F.Supp. 513, 1970, District Court, South Carolina). The restrictions in this statute together with the regulations adopted by the Secretary pursuant to Section 423(d) (2) (B), which require the plaintiff's impairments to be of such severity that they would preclude her from engaging in any gainful activity and are expected to result in death or to last for a continuous period of not less than twelve months, if strictly applied, would require that the plaintiff for all practical purposes be a complete invalid and bedridden. In this connection, the Senate Finance Committee stated in pertinent part:

"The bill would also provide benefits (as discussed in the statement on benefits for disabled widows and widowers) for certain disabled widows (including surviving divorced wives) and disabled dependent widowers under a *test of disability that is somewhat more restrictive than that for disabled workers and childhood disability beneficiaries. The determination of disability in the case of a widow or widower would be based solely on the level of severity of the impairment. Determinations in disabled widow and widower cases would be made without regard to nonmedical factors such as age, education, and work experience, which are considered in disabled worker cases.* Under this test, the Secretary of Health, Education, and Welfare would by regulation establish the severity of impairment which may be deemed to preclude an individual from engaging in any 'substantial gainful activity' (as opposed to 'gainful activity' as provided in the House bill). An individual whose impairments meet

the level of severity established by the regulations of the Secretary would generally be found to be disabled, although, of course, if other evidence establishes ability to engage in substantial gainful activity despite such impairments, he would not be found disabled; and individuals whose impairments do not meet this level of severity may not in any case be found disabled." (Emphasis added). Sen. Rpt.No.744, pages 49–50, 90th Cong., 1st Sess, U.S.Code Cong & Admin. News. p. 2883.

 Section 223(d) (2) (B), *supra,* which in accordance with the foregoing legislative policy authorizes the Secretary to determine the levels of severity which demonstrate an inability to engage in gainful activity is plainly valid. United States v. Rock Royal Co-op., Inc., 307 U.S. 533, 574, 59 S.Ct. 993, 83 L.Ed. 1446 (1939); Opp Cotton Mills v. Administrator, 312 U.S. 126, 144–145, 61 S. Ct. 524, 85 L.Ed. 624 (1941); Yakus v. United States, 321 U.S. 414, 423, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Iske v. United States, 396 F.2d 28, 31 (10th Cir. 1968); White v. United States, 395 F. 2d 5, 9 (1st Cir. 1968); Willapoint Oysters v. Ewing, 174 F.2d 676 (9th Cir. 1949), cert. denied 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527 (1950); rehearing denied 339 U.S. 945, 70 S.Ct. 793, 94 L.Ed. 1360 (1950). In particular, authorization to the Secretary to establish appropriate regulatory standards for entitlement to Title II benefits has been recognized. Haberman v. Gardner, 296 F.Supp. 661 (S.D., N.Y., 1969).

 Plaintiff contends that the Secretary's regulations setting criteria for determining whether a widow may be found to be entitled to widow's benefits is ambiguous and incorrect as to the provisions regarding the medical equivalency of impairments listed to constitute a widow's disability. While they may be too strenuous and demanding, this apparently follows the legislative intent of Section 423(d) (2) (B). Administrative regulations are presumptively valid

and should not be disturbed unless they are inconsistent with the statute or unreasonable. Keller v. Gardner, 254 F. Supp. 919 (S.D., N.Y., 1966), aff'd 370 F.2d 554 (2d Cir. 1966); Levine v. Ribicoff, 201 F.Supp. 692 (S.D., N.Y., 1962); Stuart v. Hobby, 128 F.Supp. 609 (S.D., N.Y., 1955).

 The plaintiff takes the position that the evaluation of the medical reports by Dr. Fulton is not sufficient in itself to support the decision of the Secretary, citing as authority the case of Cohen v. Perales, 412 F.2d 44 (5th Cir. 1969), rehearing denied per curiam 416 F.2d 1250 (5th Cir. 1969). The decision in *Perales* does not support this contention in light of subsequent cases decided by the Fifth Circuit, as pointed out in defendant's brief:

"* * * the principal holding of the first *Perales* decision with respect to the hearsay effect of consultative medical reports was limited by the Fifth Circuit in its subsequent *per curiam* decision. Moreover, the language in *Perales* with respect to the weight to be given consultative medical reports must be viewed in the light of subsequent Fifth Circuit decisions which are to the contrary. Stillwell v. Cohen, *supra* [411 F.2d 574 (1969)]; Martin v. Finch, *supra* [465 (415) F.2d 793 (5 Cir. 1969)]; Breaux v. Finch, [421] F.2d [687], (5 Cir., decided 1/27/70). In *Breaux,* the Fifth Circuit discussed *Perales* as follows:

'In the instant case, the evidence relating to Breaux's physical condition consists of medical records and testimony by Dr. Norman P. Morin, an orthopedic surgeon. Breaux contends that the records are hearsay, that the doctor's testimony is hearsay upon hearsay since he had not examined appellant, and that according to the principle announced in Cohen v. Perales, uncorroborated hearsay evidence cannot be considered "substantial evidence." While the original decision in *Cohen* may have provided some support, even

though slight, for the principle relied on by appellant, this court's opinion on petition for rehearing clearly undermines such an inference:

"Our opinion holds, and we affirm, that mere uncorroborated hearsay evidence as to the physical condition of a claimant, standing alone and without more, in a social security disability case tried before a hearing examiner, as in our case, is not substantial evidence that will support a decision of the examiner adverse to the claimant, if the claimant objects to the hearsay evidence, and if the hearsay evidence is directly contradicted by the testimony of live medical witnesses and by the claimant who testifies in person before the examiner, as was done in the case at bar. This is especially true if the claimant requests that the absent medical witnesses of the HEW who authorized the hearsay evidence, be subpoenaed to testify at the hearing and the examiner fails or refuses to summon them.

"When these conditions are not present, there is nothing to prevent an examiner from basing his decision, which is adverse to the claimant, on hearsay medical evidence, if such evidence has sufficient probative force to support his decision." ' "

The record as a whole reveals that the decision of the Secretary holding that the evidence fails to establish that Mrs. Frasier has an impairment or impairments of the severity listed in the Secretary's regulations or that she has an impairment or impairments of the severity medically the equivalent thereof and that the evidence fails to establish that the claimant is precluded from engaging in gainful activity by an impairment or impairments which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than twelve months, is supported by substantial evidence and the proper legal standards have been applied. Therefore, the decision of the Secretary must be affirmed.

An appropriate order will be entered.