**Lucinda J. SULLIVAN, Plaintiff-Appellant,**

**v.**

**Caspar W. WEINBERGER, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 73–3131.**

United States Court of Appeals, Fifth Circuit.

May 6, 1974.

Kenneth G. Levin, Decatur, Ga., for plaintiff-appellant.

John W. Stokes, Jr., U. S. Atty., Julian Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., Eloise E. Davies, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before RIVES, WISDOM and MORGAN, Circuit Judges.

WISDOM, Circuit Judge:

Lucinda J. Sullivan, the plaintiff-appellant, brought this action to obtain judicial review of a final decision by the Secretary of Health, Education and Welfare denying her claim for disabled widows' benefits under section 202(e) of the Social Security Act, as amended, 42 U.S.C. § 402(e). She argues that the Secretary unlawfully and unconstitutionally denied her benefits on the basis of commentary by a consultant psychiatrist who did not personally examine her. She also contends that the Secretary's regulations, which provide for disability payments only to those widows who have impairments that are listed specifically in an appendix to the regulations or that are medically equivalent to listed impairments, are invalid. The district court granted summary judgment in favor of the Secretary and dismissed the complaint. We affirm.

## I.

■ To qualify for benefits as a disabled widow under the Social Security Act, the claimant must establish that she is at least 50 years of age, that she is the widow of a wage earner who died fully insured, and that she has physical or mental impairments which, under regulations promulgated by the Secretary, are deemed to be of such severity as to preclude her from engaging in any gainful activity. 42 U.S.C. §§ 402(e) & 423(d)(2)(B); Barnes v. Richardson, E.D.Tenn.1970, 322 F.Supp. 699; Henry v. Richardson, E.D.Tenn.1970, 320 F.Supp. 296. Her impairments must be manifest within a specified period; the eligibility period relevant to this case is seven years from the month of the insured wage earner's death. See 42 U.S.C. § 402(e)(5).

Lucinda Sullivan's husband died fully insured under the Social Security Act on August 11, 1963. Her period in which to establish eligibility for widows' disability payments ran to August 31, 1970. On January 2, 1970, she filed for widows' benefits, describing her disability as "arthritis" and alleging that she became unable to work in March 1968, at the age of 57. Her claim was denied. Adding that she suffered blackout spells and an inability to grip and hold properly, she filed for reconsideration. When her claim was again denied, she requested a hearing before a Social Security Hearing Examiner. A hearing was held on March 9, 1971, at which Sullivan, represented by counsel, appeared and testified. In addition to the ailments already mentioned, she complained of kidney trouble, back pains, and overall weakness. No other witnesses testified, but written medical reports detailing Sullivan's medical history from November 1967 to October 1970 were received in evidence. These reports showed numerous examinations following complaints of chest pains, arthritis, and kidney problems. No remarkable clinical findings were reported through 1969, and an electrocardiogram was construed as within normal limits. In February 1970, at the request of the Georgia Disability Unit, Dr. Wilmer, an internist, performed a consultative examination. He reported that Sullivan's blood pressure was slightly elevated and that she had mild arthritis. He described her as appearing in good health, although she was somewhat obese. Her heart showed some irregularity; Dr. Wilmer noted her electrocardiogram could be construed as normal or as consistent with myocardial ischemia (heart disease). He suggested she avoid strenuous exertion. He concluded that she had no arthritic or musculoskeletal impairment which would prevent 2B (moderate) activities. Dr. Smith, a psychiatrist and neurologist, performed a consultative examina-

tion at the request of the Georgia Division of Vocational Rehabilitation on May 19, 1970. His neurological findings showed that Sullivan was essentially normal, that there were no signs of organic disease of the nervous system. On October 23, 1970, Dr. Harper examined the plaintiff for the Georgia State Department of Family and Children services. Dr. Harper diagnosed arthritis, inadequately treated; arterial hypertension; and an irritable urinary bladder. He noted that her condition could be improved with treatment. After reviewing these reports the hearing examiner found that Sullivan did not qualify for widows' disability payments, and he denied her claim.

Subsequent to the decision of the hearing examiner, and more than eight months after August 31, 1970, the date Sullivan's eligibility expired under the Act, her attorney arranged for her to be examined by Dr. Edward Leader, a board-certified specialist in psychiatry and neurology. Dr. Leader made the following finding:

"On psychiatric examination Mrs. Sullivan is pleasant and cooperative. She attributes all of her troubles to physical ailments. Depression and anxiety are denied. No evidence of psychosis is present.

Mrs. Sullivan seems to be the kind of person who has given up on being a productive person and has unconsciously labelled herself as a person too sick to work. As such she can best be diagnosed as having a *conversion neurosis* [mental preoccupation with physical ailments and complaints resulting from emotional factors[1]] which is quite fixed. There is no chance that she would be able to work in the future. Neither is there at this advanced age any chance that she would be amenable to treatment. She is therefore, from a psychiatric point of view, functionally disabled." (Emphasis original.)

---

1. "Conversion" is defined in psychiatry as "the process whereby a suppressed emotion . . . is transformed into a physical disability". J. Schmidt, Attorneys' Dictionary of Medicine C–126 (1973).

Sullivan submitted Dr. Leader's report to the Social Security Administration Appeals Council and requested review of the hearing examiner's decision. The Appeals Council forwarded the medical evidence to Dr. Forest K. Harris, an internist, and Dr. Randolph Frank, a psychiatrist, for their comments. Each doctor concluded that Sullivan had no impairments which either singly or in combination equalled the severity of the impairments deemed by the Secretary in his regulations "to preclude an individual from engaging in any gainful activity". 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1504–404.1506. After receiving the reports of Drs. Frank and Harris, Sullivan's attorney submitted a followup report by Dr. Leader:

"[A] conversion neurosis with multiple somatic complaints almost always takes years to develop. She has been complaining about health problems at least since 1968, and I suspect that her conversion neurosis preceded even that date. That is the typical pattern for this disease. The patient appears calm and placid, but all of their [sic] anxieties are *converted* to psychologically imposed physical symptoms." (Emphasis original.)

On consideration of all the evidence, the Appeals Council determined that Sullivan was not disabled within the meaning of the Act on or before August 31, 1970. Accordingly, in a decision representing the final decision of the Secretary, on January 26, 1972, the Appeals Council denied her claim for disability payments. The district court upheld the Appeals Council's determination.

## II.

Sullivan first contends that the Secretary may not consider the report of a medical consultant—in this case Dr. Frank—who has not personally examined the claimant.[2] Second, she implies that without Dr. Frank's comments there is no substantial evidence to up-

hold the Secretary's decision. We disagree on both counts.

Congress has delegated to the Secretary the responsibility for determining whether an impairment is so severe as to preclude the claimant from engaging in gainful activity. 42 U.S.C. § 423(d)(2)(B). Under this grant of authority the Secretary has compiled a "Listing of Impairments" that automatically signals disability. See 20 C.F.R. §§ 404.1501 et seq., appendix to Subpart P. If the claimant cannot demonstrate the presence of a "listed" impairment, she can nevertheless qualify for benefits if she can show, to the satisfaction of the Secretary, that her impairments are "medically the equivalent of a listed impairment". 20 C.F.R. § 404.-1504.

The Secretary has established by regulation the requirements for determining medical equivalence:

"Any decision made . . . as to whether an individual's impairment or impairments are medically the equivalent of an impairment listed in the appendix to the Subpart P, *shall be based on medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic techniques, including a medical judgment furnished by one or more physicians designated by the Secretary, relative to the question of medical equivalence*".

20 C.F.R. § 404.1505(b) (emphasis supplied). The Secretary argues that the italicized portion of the quoted regulation is not to be read to require the designated physician's opinion as to medical equivalence to be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques". Rather, the Secretary maintains, it is only the final decision of the Secretary which must be so demonstrated. We cannot say otherwise. Congress delegated to the Secretary the responsibility for prescribing regulations concerning the determination of what showing is sufficient to

2. Arguing that she is psychologically disabled, Sullivan does not contest the use of

Dr. Harris' report, which dealt only with physical ailments.

prove that the claimant's alleged impairment is a disability under the Act. See 42 U.S.C. §§ 223(d)(2)(B) & (d)(5).[3] This is an area where administrative expertise should be accorded great weight. Certainly the Secretary is the best judge of the meaning and suitability of his regulations, and we are not aware of any application of this regulation inconsistent with the interpretation he now presents before this Court. Moreover, the Supreme Court has expressly approved use of an independent medical adviser ("that is, an expert who does not examine the claimant but who hears and reviews the medical evidence and who may offer an opinion"). Richardson v. Perales, 1971, 402 U.S. 389, 396, 91 S.Ct. 1420, 1425, 28 L.Ed.2d 842. The Court stated:

> "Inasmuch as medical advisers are used in approximately 13% of disability claim hearings, comment as to this practice is indicated. We see nothing 'reprehensible' in this practice, as the claimant would describe it. The trial examiner is a layman; the medical adviser is a board-certified specialist. He is used primarily in complex cases for explanation of medical problems in terms understandable to the layman-examiner. He is a neutral adviser."

402 U.S. at 408.

Sullivan attempts to distinguish *Perales* from the case at hand,[4] but we are able to see no viable grounds for doing so. In both cases an independent adviser, designated by the Secretary, reviewed the medical evidence and, in conflict with the opinion of one of the doctors who had personally examined the claimant, found that the claimant's impairments were not medically equivalent to one of the impairments listed in the regulations as disabling. In neither case was the commentary by the independent, nonexamining doctor the only evidence supporting the Secretary's conclusion of no disability. Compare Martin v. Secretary, 4 Cir. 1974, 492 F.2d 905 and Hayes v. Gardner, 4 Cir. 1967, 376 F.2d 517, with Kyle v. Cohen, 4 Cir. 1971, 449 F.2d 489.

■ Sullivan also argues that the Secretary's consideration of a designated physician's opinion, when not based on the physician's own personal examination of the claimant, violates the claimant's fifth amendment rights. The contention is apparently that the claimant is put at an unfair disadvantage; her medical evidence must be based on "medically acceptable clinical and laboratory diagnostic techniques", while the Secretary's designated physician may report a contrary conclusion without similar restriction. This argument is completely without merit. First, it is specious to suggest that placing the burden on the claimant to prove eligibility for payments under the Social Security Act is unconstitutional. See Hart v. Finch, 5 Cir. 1971, 440 F.2d 1340; Hayes v. Celebrezze, 5 Cir. 1965, 349 F.2d 561. Second, Sullivan misinterprets the role of the physician designated by the Secretary to render an opinion on medical equivalence. The medical adviser is

---

3. See also 42 U.S.C. § 423(d)(3): "For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

4. Sullivan points out that the Court in *Perales* noted that the adviser's opinion did not differ from "the medical reports". 402 U.S. at 408. See Martin v. Secretary, 4 Cir. 1974, 492 F.2d 905, 909. We reject Sullivan's implication that *Perales* thereby approved use of the adviser's opinion only when it does not differ from other evidence. Not only would

this be illogical—the advice of an independent, neutral physician is at least as critical when there are conflicting medical opinions in the record—, but a careful reading of *Perales* indicates that Mr. Justice Blackmun, the author of the majority opinion, must have been referring to the reports of five examining physicians who concluded that the claimant was not disabled. The record did contain evidence submitted by the claimant's attending physician to the effect that the claimant was disabled. Furthermore, the claimant's physician testified at both hearings in the case, presumably supporting his earlier diagnoses. See 402 U.S. at 392–395.

"neutral"; he is designated to render an independent opinion on the evidence, not to contest the claimant's position. And there is no hint that Dr. Frank, the designated physician whose opinion is attacked in this case, approached his task in any way biased or predisposed to find against the claimant. Finally, the Supreme Court affirmed the constitutionality of the procedure in *Perales*: "We see nothing unconstitutional or improper in the medical adviser concept." 402 U. S. at 408.

■ Even without relying on Dr. Frank's opinion, we find substantial evidence to uphold the decision of the Appeals Council and to affirm the judgment of the district court. This Court has recently reiterated the longstanding rule that our function in reviewing fact findings of the Secretary under the Social Security Act is "limited to determining whether there is substantial evidence in the record, considered as a whole, to support them". Hemphill v. Weinberger, 5 Cir. 1973, 483 F.2d 1137, 1139. "Substantial evidence" has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. v. NLRB, 1938, 305 U. S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126; Williams v. Finch, 5 Cir. 1971, 440 F.2d 613, 617.

■ All the medical evidence, except for that provided by Dr. Leader, supports the Secretary's conclusion that there was no impairment here sufficiently severe to represent the medical equivalent of a listed impairment. Sullivan's physical and neurological examiners never reported a disabling disease. She showed no seriously impaired ability to relate and no deterioration of her personal habits.[5] Moreover, the record reveals that she continued to do her own housework. Against this evidence, the opinion of Dr. Leader that Sullivan was disabled is unpersuasive. He did not examine her until more than eight months after the expiration of her insured status. On the basis of her stated history, he "suspected" that her conversion neu-

---

5. Although it is not clear what listed impairment Sullivan contends her impairments are equivalent to, her conversion neurosis seems to fit most closely "Functional nonpsychotic disorders (psychophsyiologic, psychoneurotic and personality disorders)". Impaired ability to relate and deterioration of personal habits are signs that such an impairment is sufficiently severe to signal disability:

"12.04 *Functional nonpsychotic disorders (psychophysiologic, and personality disorders)*. Manifested by marked restriction of daily activities and constriction of interests and deterioration in personal habits and seriously impaired ability to relate to other people and persistence of one of the following:

A. Demonstrable structural changes mediated through psychophysiological channels (e. g., duodenal ulcer) ; or

B. Recurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory; or

C. Persistent depressive affect with insomnia, loss of weight, and suicidal ideation; or

D. Phobic or obsessive ruminations with inappropriate, bizarre or disruptive behavior; or

E. Compulsive, ritualistic behavior; or

F. Persistent functional disturbance of vision, speech, hearing or use of a limb with demonstrable structural or trophic changes; or

G. Life-long, habitual, and inappropriate patterns of behavior manifested by one of the following:

1. Seclusiveness and autistic thinking; or

2. Antisocial or amoral behavior (including pathologic sexuality) manifested by; (a) inability to learn from experience and inability to conform with accepted social standards, leading to repeated conflicts with society or authority and (b) by psychopathology documented by mental status examination and the results of appropriate, standardized psychological tests; or

3. Addictive dependence on alcohol or drugs, with evidence of irreversible organ damage; or

4. Pathologically inappropriate suspiciousness or hostility manifested by psychopathology documented by mental status examination and the results of appropriate, standardized psychological tests."

20 C.F.R. § 404.1501 et seq., appendix to Subpart P.

rosis originated before 1968. His report was conclusory. He reasoned, inductively and apparently without firm foundation, that she had been completely disabled "from the point of view of being capable of doing productive work" for three or four years. In any event, we cannot say that the apparent incredulity of the Appeals Council was not justified. The resolution of conflicts in the evidence is the task of the Secretary, not of a reviewing court. Payne v. Weinberger, 5 Cir. 1973, 480 F.2d 1006, 1007.

 Sullivan maintains, however, that there is actually no conflicting evidence and that the Council's conclusion that her *psychiatric* impairment was not so serious as to be the medical equivalent of a listed impairment is not supported by substantial evidence. She discounts the reports of her many physical and neurological examinations and points to the fact that Dr. Leader's finding that she was functionally disabled is uncontroverted by any examining specialist in psychiatry. Even were we to accept Sullivan's distinction between evidence from psychiatric examinations and that from other examinations, we would not feel inclined to overturn the decision of the Appeals Council in this case. The conclusory statement of a psychiatrist with regard to the claimant's disability, when his examination took place after the termination of her eligibility, is not conclusive and binding on the Secretary. Cf. 20 C.F.R. § 404.1526; Halsey v. Richardson, 6 Cir. 1970, 441 F.2d 1230. We are unconvinced that evidence from Sullivan's physical and neurological examinations is not relevant. According to Dr. Leader's reports, conversion neurosis is a psychological disorder that manifests itself in physical symptoms. The Appeals Council refused to ignore Sullivan's medical history before Dr. Leader's examination. The expertise of the administrative agency is entitled to great weight in such matters. See 1 K. Davis, Administrative Law Treatise 38 (1958). Reviewing the record on the whole, we find substantial evidence to support the Secretary's decision of no disability.

### III.

 Sullivan's final contention is that the Secretary's regulations, by limiting recovery of widows' disability payments to those with a listed impairment or with one that is medically the equivalent, are either out of conformity with the enabling statute or are unconstitutional. See 20 C.F.R. § 404.1504. We find no merit in this contention. The legislative history of the Social Security Amendments of 1967 makes clear that Congress intended widows' benefits to be paid only for a disabling medical impairment, not simply for an inability to obtain employment. S.Rep. No. 744, 90th Cong., 1st Sess. 49–50, 1967 U.S.Code Cong. & Admin.News p. 2883; H.R. Rep.No.544, 90th Cong., 1st Sess. 27, 31; Gunter v. Richardson, W.D.Ark. 1972, 335 F.Supp. 907, 912; Frasier v. Finch, N.D.Ala.1970, 313 F.Supp. 160, 162, aff'd sub nom., Frasier v. Richardson, 5 Cir. 1970, 434 F.2d 597. Whereas factors such as age, education, and work experience must be considered in deciding claims by disabled workers under the Act, 42 U.S.C. § 423(d)(2)(A), nonmedical factors are not to be considered in disabled widows' claims. In addition, although a disabled worker may recover when conditions prevent him from "engaging in *any substantial* gainful activity", id. (emphasis supplied), a claimant seeking disabled widows' benefits does not profit from the modifier "substantial"; she may recover only if her impairments are of a level of severity deemed to preclude her from "engaging in *any* gainful activity", 42 U.S.C. § 423(d)(2)(B) (emphasis supplied). The Secretary's regulations clearly fit within the congressional scheme. Furthermore, the different treatment of workers and widows suffers from no constitutional infirmity. Congress need not treat all classes of claimants identically. See Flemming v. Nestor, 1960, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L. Ed.2d 1435; Gruenwald v. Gardner, 2

Cir. 1968, 390 F.2d 591, cert. denied, 393 U.S. 982, 89 S.Ct. 456, 21 L.Ed.2d 445.

Sullivan also argues that, assuming she does not fit within the criteria established by the Secretary, she is nevertheless totally disabled by medical impairments. Therefore, she contends, the regulations are invalid and unconstitutional because·they treat members of the same class—medically disabled widows —differently without legitimate reason for doing so. As we have stated, however, Dr. Leader's conclusion that Sullivan was disabled does not bind the Secretary. The Appeals Council evidently looked with some skepticism upon Dr. Leader's reports, and on the basis of other evidence found that Sullivan's impairments were not so serious as to be considered medically the equivalent of a listed impairment. The Secretary's regulations are designed to treat equally all claimants who have equally severe impairments. We have no proof that the regulations do not in fact do so.

We have considered Sullivan's subsidiary arguments and find them to be without merit.

Affirmed.