Lorene H. DETERS, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant-Appellee.

No. 85–4763.

United States Court of Appeals, Fifth Circuit.

May 19, 1986.

---

George A. Flournoy, Alexandria, La., for plaintiff-appellant.

Thomas Stanton and Karen J. Behner, Dallas, Tex., for defendant-appellee.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A widow applied for insurance benefits under sections 202(e) and 223(d)(2)(B) of the Social Security Act [1] alleging disability due to pulmonary emphysema, arthritis and bursitis. An administrative law judge determined that she was disabled within the meaning of the Act and entitled to benefits. On its own motion, pursuant to 20 C.F.R. §§ 404.969–.970, the Appeals Council reviewed the ALJ's decision and held that the widow was not disabled. The district court affirmed the Appeals Council's final decision, finding it supported by substantial evidence. The widow argues that the Appeals Council had no authority under the Act to review the ALJ's decision, and that, even if it did, the Council's final decision was not supported by substantial evidence. We hold that the Appeals Council did have the power to review the ALJ's decision sua sponte and that our appellate review is of the final decision of the Secretary, as reflected in the opinion rendered by the Appeals Council. We find, however, that the Appeals Council's decision was not supported by substantial evidence in the record.

## I.

Lorene Deters was widowed in 1967. She had applied for widow's benefits on two previous occasions, but both applications were denied.

---

1. 42 U.S.C. §§ 402(e) & 423(d)(2)(B).

Dr. George Mowad, a family practitioner, is Mrs. Deter's treating physician. He diagnosed that Mrs. Deters suffered from obstructive pulmonary disease, osteoarthritis of the low back, bursitis and anxiety. He also noted shortness of breath on exertion, and that her X-rays revealed calcification in the left lower lung lobe. Dr. Mowad had Mrs. Deters hospitalized for pulmonary emphysema with secondary bronchitis in May and again in November 1982. Dr. Mowad was of the opinion that Mrs. Deters was disabled, as defined under the Act, due to her chronic pulmonary disease and osteoarthritis.

The ALJ found credible Mrs. Deters' own testimony as to her disabling condition. She testified to much difficulty in breathing and felt her condition was worsening. She claims the pain in her back intensifies on sitting or standing for any appreciable length of time, that she takes pain-relieving medication, but that she still must lie down periodically during the day to get complete relief. Apparently she is only able to take care of her needs with the assistance of her family. The ALJ described Mrs. Deters in this manner:

> Claimant's height is five feet, two inches. Her weight fluctuates slightly, but stays in the mid to high nineties. Her appearance is one of extreme frailty and that of a person of 70 or more. She walked with a limp; her shoulders were stooped. She was obviously experiencing breathing distress during the hearing and had considerable difficulty testifying because of her distress.

A consultative examination at the request of the Social Security Administration was performed by Dr. Samuel Stagg, an internist and general practitioner, for the purpose of the administrative hearing. Dr. Stagg was of the opinion that Mrs. Deters had chronic obstructive pulmonary disease with chronic bronchitis. Her lung fields showed chronic fibrotic changes. He interpreted her electrocardiogram to be consistent with chronic pulmonary disease. Dr. Stagg detected bursitis of the left shoulder, chronic lumbosacral back pain, and anxiety.

Although Mrs. Deters could not undergo the spirometry tests administered by Dr. Stagg, because of her difficulty breathing, Dr. Stagg nonetheless concluded that Mrs. Deters was unable to do any type of gainful employment.

At the request of the ALJ, Dr. John Worley, a board certified internist, was present at the hearing as a medical advisor. He testified that, notwithstanding Mrs. Deters' inability to undergo the spirometry test because of her coughing, the severity of the obstructive pulmonary disease was indicated by other manifestations including the flattening of her diaphragm, diminished lung breath sounds, an increase in her cycle of expiratory respiration, and her electrocardiogram. It was his opinion that her symptomatology equaled in severity that of the Listing of Impairments set forth in Appendix 1, Subpart P of the regulations, but he did not specify which section. With respect to Mrs. Deter's musculoskeletal complaints, Dr. Worley stated that the record did not contain objective findings to show that she met the listing requirements.

The ALJ noted that Mrs. Deters' chronic obstructive pulmonary disease could not be shown to meet the listing of impairments because the spirometry test did not demonstrate her disability; this was because she was unable, after two good faith attempts, even to do the breathing necessary for the spirometry test. The ALJ found her nevertheless to be disabled on the basis of her own physician's reports, the report of the consultative examiner, Dr. Stagg, and the testimony of the medical advisor, Dr. Worley.

The Appeals Council sua sponte reviewed the ALJ's decision. It appointed Dr. O'Connor, a specialist in internal medicine and pulmonary diseases, to review Mrs. Deters' medical record. Without seeing or examining Mrs. Deters, Dr. O'Connor concluded that she had only a mild degree of arthritis and a mild pulmonary disease and that she therefore did not meet the listing requirements for benefits under the Act.

## II.

■ In *Scott v. Heckler*,[2] the Seventh Circuit held that 20 C.F.R. § 404.970(a) limits the circumstances pursuant to which the Appeals Council has authority on its own motion to review a decision of an ALJ. Section 404.970(a) provides:

(a) The Appeals Council will review a case if—

(1) There appears to be an abuse of discretion by the administrative law judge;

(2) There is an error of law;

(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or

(4) There is a broad policy or procedural issue that may affect the general public interest.

That court held that "[w]hen the Secretary fails to exercise properly her authority to review [under § 404.970(a)] ..., then it is the ALJ's decision and not the Appeals Council's, which constitutes the Secretary's final decision for purposes of our review."[3] The Fourth, Sixth, and Eleventh Circuits have rendered decisions in accord with *Scott v. Heckler*.[4]

While this circuit has not yet had an occasion to consider the Appeals Council's authority to review an ALJ's decision under §§ 404.969 and 404.970(a), Mrs. Deters urges us to adopt the same restrictive interpretation. The First, Eighth, and Ninth Circuits, however, have held that the regulation does not impose upon the Appeals Council judicially enforceable deference to those ALJ's factfindings that have not been appealed and are supported by sub-

stantial evidence.[5] We think the latter interpretation of the regulation is the more tenable.

As the Eighth Circuit stated in *Baker v. Heckler*, deference is due an agency's interpretation of its own regulations.[6] If the agency reading is not unreasonable, we are not to substitute our better (or worse) judgment. We agree with the Secretary's argument that § 404.970(a) can be reasonably interpreted as merely providing *notice* of when the "Appeals Council will review a case."

Moreover, a companion regulation, 20 C.F.R. § 404.969, provides:

*Appeals Council initiates review.*

Anytime within 60 days after the date of a hearing decision or dismissal, the Appeals Council itself may decide to review the action that was taken. If the Appeals Council does review the hearing decision or dismissal, notice of the action will be mailed to all parties at their last known address.

Thus, while § 404.970(a) enumerates the kinds of decisions the Appeals Council *will* review under its own-motion review authority, § 404.969 intimates that the Appeals Council *may* review *any* administrative law judge decision under its own-motion-review authority.[7] Read in conjunction with § 404.969, § 404.970(a) need not be interpreted as confining the sua-sponte-review powers of the Appeals Council to the four stated bases.

■ Such a reading does not rob § 404.-970(a) of any "meaning and effect," as suggested by the Seventh Circuit in *Scott*

---

**2.** 768 F.2d 172 (7th Cir.1985).

**3.** *Id.* at 179.

**4.** *Parris v. Heckler*, 733 F.2d 324, 325–26 (4th Cir.1984); *Newsome v. Secretary*, 753 F.2d 44, 46 (6th Cir.1985); *Parker v. Heckler*, 763 F.2d 1363, 1365–66, *reh'g en banc granted and opinion vacated*, 774 F.2d 428 (11th Cir.1985). *But see Townsend v. Secretary*, 762 F.2d 40, 43 (6th Cir.1985); *Shepherd v. Secretary*, 758 F.2d 196, 198 (6th Cir.1985); *DeLong v. Heckler*, 771 F.2d 266, 267–68 (7th Cir.1985).

**5.** *Lopez-Cardona v. Secretary*, 747 F.2d 1081, 1083 (1st Cir.1984); *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984); *Taylor v. Heckler*, 765 F.2d 872, 874–75 (9th Cir.1985); *Razey v. Heckler*, 785 F.2d 1426 (9th Cir.1986). *Cf. Kellough v. Heckler*, 785 F.2d 1147, 1149–51 (4th Cir. 1986); *White v. Schweiker*, 725 F.2d 91, 93–93 (10th Cir.1984).

**6.** *Baker*, 730 F.2d at 1149.

**7.** *See Delong v. Heckler*, 771 F.2d 266, 267–68 (7th Cir.1985).

*v. Heckler.*[8] Instead, it recognizes the limited purpose behind § 404.970(a)—to advise claimants when sua sponte review will be undertaken. As the Eighth Circuit observed in *Baker,* the reading of the regulation urged by Mrs. Deters "ignores the fact that the statute authorizes the Secretary, not the ALJ, to make reviewable final decisions in disability cases. The Secretary has chosen to act through the Appeals Council, and therefore it is the Council's decision that must be deferred to by the courts if substantial evidence exists to support it, whatever the result might have been if the courts were reviewing the ALJ's decision directly."[9] Such a reading would also be impractical, as the Eighth Circuit noted, because the decision to review an ALJ's determination must be addressed in the very preliminary stages of the Appeals Council review process. If the Appeals Council, on further examination, does find that an ALJ's decision was, in fact, supported by substantial evidence, the Council must not then be "required to abandon its own review and ... allow the ALJ's decision to stand."[10] Such an interpretation "would render the whole review process nugatory."[11]

We, therefore, now consider whether the Secretary's decision, as reflected in the Appeals Council's final determination, is supported by substantial evidence.

### III.

■ Our task is to determine whether there is substantial evidence in the record to support the decision of the Secretary. We do not reweigh the evidence or try the issues de novo.[12] Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[13]

The burden of proof rests on the claimant to establish her entitlement to disabled widow's benefits.[14] Sections 202(e) and 223(d)(2)(B) of the Social Security Act establish a three-pronged test for eligibility for disabled widow's insurance benefits. To qualify for disabled widow's benefits, a claimant must establish that she is not married, is between 50 and 60 years old, and has a physical or mental impairment or impairments that, under the regulations promulgated by the Secretary, are deemed to be so severe as to preclude her from engaging in any gainful activity.[15]

The legislative history of the Social Security Amendments of 1967 shows that Congress intended to impose a stricter disability test on widows-benefits claimants than that imposed on a worker seeking benefits on his own earnings record. As this court stated in *Sullivan v. Weinberger,*[16] Congress intended to grant benefits to widows only for a disabling medical impairment, not simply for an inability to obtain employment; factors such as age, education and work experience are not considered in a widow's benefits case.[17] In addition, a wage earner may receive disability benefits if unable to engage in any *substantial* gainful activity,[18] but a widow is not considered disabled unless she is unable to perform *any* gainful activity.[19]

Pursuant to section 223(d)(2)(B) of the

---

8. 768 F.2d at 178.

9. *Baker,* 730 F.2d at 1150.

10. *Id.*

11. *Id.*

12. 42 U.S.C. § 405(g); *Cook v. Heckler,* 750 F.2d 391, 392 (5th Cir.1985).

13. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

14. *Watts v. Harris,* 614 F.2d 515, 516 (5th Cir.), *cert. denied,* 449 U.S. 863, 101 S.Ct. 168, 66 L.Ed.2d 80 (1980).

15. 42 U.S.C. §§ 402(e) and 423(d)(2)(B).

16. 493 F.2d 855, 862 (5th Cir.1974), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975).

17. *Id.*

18. 42 U.S.C. § 423(d)(1)(A).

19. 42 U.S.C. § 423(d)(2)(B).

Act,[20] the Secretary has published a "Listing of Impairments" for use in determining whether to award widow's benefits.[21] The listing describes impairments that are deemed severe enough to preclude an individual from engaging in any gainful activity. The accompanying regulations provide that a widow will be found to be disabled only if she has a medically determinable physical or mental impairment shown by "specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there."[22] Generally, for an impairment to be medically equivalent to a listed impairment it must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques.[23]

 The Secretary argues that Mrs. Deters' respiratory condition has not been shown to equal an impairment listed in the Appendix 1 of the regulations because there is no spirometric evidence in the record that shows the requisite obstruction of Mrs. Deters' airway passages necessary to be considered a disability under the Act. This is literally true, but it ignores *why* the spirometric evidence was unavailable. Under the Secretary's argument, a person who is too ill even to take a test for disability would, ironically and incongruously, be found not disabled. The fact that Mrs. Deters was able to take the spirometric test in September 1981 and that the test then showed "normal ventilatory function" does not establish her non-disability two years later.

The ALJ credited Mrs. Deters' personal testimony and that of three other doctors who supported her application. Dr. Worley's testimony, which we have already summarized, provides ample evidence of objective clinical findings. That test results were unobtainable does not give the Secretary license to ignore other objective

medical evidence of disability. Viewing the entire record as a whole, it lacks substantial evidence to support the Secretary's denial.

The district court's decision is REVERSED and the case is REMANDED with instructions to remand to the Secretary for an award of benefits.

---

20. *Id.*

21. 20 C.F.R. Part 404, Subpt. P, App. 1 (1985).

22. 20 C.F.R. § 404.1578 (1985).

23. 20 C.F.R. § 404.1526 (1985); *see Sullivan v. Weinberger,* 493 F.2d 855, 859 (5th Cir.1974), *cert. denied,* 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975).