**Georgina GEORGEVITCH, Plaintiff,**

**v.**

**Otis BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 86 C 2969.**

United States District Court,
N.D. Illinois, E.D.

Dec. 22, 1986.

Laurie D. Lawrijan, Chicago, Ill., for plaintiff.

Eileen Marutzky, Ass't. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Georgina Georgevitch ("Georgevitch") seeks judicial review of a final decision by Secretary of Health and Human Services Otis Bowen ("Secretary") denying Georgevitch's claim for widow's insurance. Georgevitch initially applied for benefits under Social Security Act ("Act") §§ 202(e), 216(i) and 223 (42 U.S.C. §§ 402(e), 416(i) and 423 [1]), seeking widow's insurance as well as supplemental security income ("SSI") and disability insurance. After a September 10, 1985 hearing, Administrative Law Judge James F. Drzewiecki ("ALJ Drzewiecki" or simply the "ALJ") issued two September 27, 1985 opinions:

1. "Opinion I" (R. 14–17) granted Georgevitch's application for SSI and disability insurance.

2. "Opinion II" (R. 9–12) denied her application for widow's insurance benefits.

Georgevitch requested review of Opinion II, exhausting her administrative remedies in proper sequence, and this action against Secretary under Section 405(g) followed.

As invariably occurs in these actions, which come to this Court on the administrative record and a decision by Secretary, the parties have filed cross-motions for summary judgment. For the reasons stated in this memorandum opinion and order, Georgevitch's application is remanded to Secretary for proceedings consistent with this opinion.

### Facts

On July 3, 1984 Georgevitch (then age 56, R. 10) stopped working as a practical nurse due to severe pain in her right shoulder (R. 15). Eight days later Georgevitch entered St. Elizabeth's hospital for surgical repair of a transverse tear of the tendinous cuff of the right shoulder (R. 138). Medical opinions of three doctors indicate neither the surgery nor later physical therapy has eliminated Georgevitch's right shoulder problem or the constant pain it causes her (R. 36):

1. Dr. Gleason, who performed the right shoulder surgery, examined Georgevitch October 31, 1984, found limited motion of the right shoulder (inability to abduct it actively beyond 45 degrees) and concluded Georgevitch was restricted in her ability to use the right upper extremity (R. 156).

2. Dr. Chen examined Georgevitch November 13, 1984 and concluded (R. 159) she had "significant limited range of motion of the right shoulder" and "mild weakness of the right upper extremity." Although Georgevitch was able to use her fingers and hands for "manipulations," Dr. Chen observed (R. 159–60) weakness in the right arm with reduced gripping power in the right hand.

3. Dr. Steinitz treated Georgevitch January 22, 1985 for first and second degree burns to the right shoulder caused during physical therapy. He concluded (R. 211) Georgevitch's prognosis was "bad," noting (R. 165):

The right shoulder joint cannot be used for all practical purposes. She cannot lift the right arm and passive movements are possible when lifting the

---

**1.** All Act provisions will hereafter be cited "Section—," referring to the Title 42 numbering rather than to the Act's internal numbering.

Regulations drawn from 20 C.F.R. will be cited "Reg. § —."

arm forward up to 90 degrees; sideways the arm can be moved possibly up to 90 degrees and some movement backwards is possible, too. Sharp and dull cannot be well differentiated in the area of the burn and shoulder repair.

In addition to her right shoulder injury, Georgevitch has other medical problems for which she has been treated:

1. acute bronchitis (R. 184);

2. some type of cysts in the breast area (R. 186);[2] and

3. frequent bladder infections (R. 190–91). No physicians' opinions as to the seriousness of those ailments appear in Georgevitch's administrative record. That file contains only handwritten and for the most part illegible medical records of treatment.

Finally Georgevitch complains of a multitude of medical problems for which there appear to be no medical records:[3]

1. swelling, stiffness and pain of joints throughout the body (R. 50);

2. tendinitis and arthritis in the fingers, left arm, right shoulder area and knee (R. 47, 50–51);

3. back injury with pinched nerve, numbness in the left leg and weakness in the entire lower extremity, resulting from a September 6, 1983 automobile accident (R. 47–48);

4. spinal sclerosis (R. 37, 42, 45–46);[4]

5. high blood pressure (R. 47);

6. fainting spells 5 to 6 times per week (R. 38);

7. neck and head pain (R. 38); and

8. congested lungs (R. 46).

To combat those problems Georgevitch takes several medications (valium, caprosyn, clinoiril, indocin and tylenol # 3) about three times a day (R. 53, 213). Nevertheless Georgevitch complains she can only lift between 5 and 15 pounds with her left arm and no more than 2 pounds with her right arm (R. 41). And she cannot sit longer than 2 hours or walk farther than 1–1/2 blocks (R. 40–41).

## Applying the Statutory-Regulatory Framework

Disabled wage earners are entitled to "disability insurance benefits" under Section 423(a). "Supplemental security income" is also provided for under Section 416. Finally, the widow of a deceased wage earner[5] is entitled to "widow's insurance benefits" under Section 402(e) if her deceased husband was "fully insured" and she is either:

1. more than 60 years old or

2. between 50 and 60 years old and "under a disability."

Congress wanted to establish a more strict standard for disabled widows than for disabled wage earners (see Conf.Rep. No. 1030, 90th Cong., 1st Sess. (1967), *reprinted in* 1967 U.S. Code Cong. & Admin. News 2834, 3179, 3197; *Sullivan v. Weinberger*, 493 F.2d 855, 862 (5th Cir.1974), *cert. denied*, 421 U.S. 967, 95 S.Ct. 1958, 44 L.Ed.2d 455 (1975)). Thus Section 423(d)(2) sets out two different definitions of the term "disability." On the one hand, a wage earner[6] is disabled under Section 423(d)(2)(A) if (emphasis added):

---

**2.** Georgevitch says (R. 37, 46–47) she has also been treated for cysts in the arm (she does not say which) and left hand.

**3.** It is possible records do exist in Georgevitch's administrative file, but if so this Court is unable to decipher them.

**4.** But Dr. Chen's report (R. 159) said Georgevitch had "full range of motion" in, and "[t]here was no paraspinal muscle tenderness or spasm along[,] the cervical and lumbosacral spine."

**5.** This usage should not be misunderstood as implying the Act is sex-discriminatory: Its widow's disability definition applies to widowers (and to surviving divorced wives and husbands) as well. For simplicity's sake, however, this opinion will speak in terms of Georgevitch's own situation—a widow whose deceased husband had been a wage earner.

**6.** Actually Section 423(d)(2)(A) does not use the term "wage earner" but rather says the definition applies to:

> an individual (except a widow, surviving divorced wife, widower, or surviving divorced husband for purposes of section 402(e) of this title) . . . .

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, *considering his age, education and work experience,* engage in any other kind of *substantial gainful work* which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work....

On the other hand, a widow (Section 423(d)(2)(B) (emphasis added)):

shall not be determined to be under a disability ... unless ... her mental impairment or impairments are of a level of severity which *under regulations prescribed by the Secretary* is *deemed to be sufficient* to preclude an individual from engaging in *any gainful activity.*

Secretary has responded by issuing regulations that make it more difficult for a widow to be found disabled than a wage earner. Reg. § 404.1520 sets out a five-step process for wage-earner-disability determinations, summarized in *Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984):

The following steps are addressed in order. (1) Is the claimant presently employed? (2) Is the claimant's impairment "severe"? [7] (3) Does the impairment meet or exceed one of the list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination the claimant is not disabled.

Once a claimant has demonstrated an impairment of sufficient severity to prevail at step 4, *Smith v. Schweiker,* 735 F.2d 267, 270 (7th Cir.1984) teaches:

The burden then shift[s] to the agency to show the claimant retained the residual functional capacity to perform other work in the national economy.

Disability determinations for widows are done differently. Reg. § 404.1577 provides a widow's age, education and work experience will *not* be considered in determining whether she is disabled. Instead she will be found disabled only if (Reg. § 404.1578):

Your impairment(s) has specific clinical findings that are the same as those for any impairment in the Listing of Impairments in Appendix 1 or are medically equivalent to those for any impairment shown there....

In other words, a widow found to have an impairment that, though severe, is one not listed or equivalent to one listed in Appendix 1 loses more than a conclusive presumption of disability. Unlike a wage earner in like circumstances, the widow gets no equivalent of the step 5 opportunity: [8] Secretary will not proceed to determine whether the widow's severe impairment nonetheless precludes her from performing "any gainful activity." Instead the widow is automatically found *not* disabled for purposes of determining her entitlement to widow's insurance benefits.

Not surprisingly, then, widow disability determinations often turn on whether a severe impairment is "equivalent" to an

---

For convenience this opinion will refer to "an individual" within the meaning of that section as a "wage earner."

**7.** [Footnote by this Court] *Johnson v. Heckler,* 769 F.2d 1202, 1209–13 (7th Cir.1985) has since then invalidated the second step of Secretary's formulation. That issue is now pending before the Supreme Court in *Bowen v. Yuckert,* No. 85–1409 (see 55 U.S.L.W. 3040, 3059), in which certiorari was granted to the Ninth Circuit, which had agreed with *Johnson* in *Yuckert v. Heckler,* 774 F.2d 1365, 1369–70 (9th Cir.1985).

**8.** Because step 4 is an automatic disqualifier if not met, this opinion refers to the difference between wage earners and widows in terms of step 5. Secretary's regulations in that respect are also supported by the difference between the statutory references: "any gainful activity" for widows' benefits, as contrasted with "any *substantial* gainful activity" for wage earners' benefits. *Sullivan,* 493 F.2d at 862.

Appendix 1 impairment. Thus some explanation is due in that regard. Equivalence determinations are made in the first instance by a Secretary-designated physician who provides an "expert medical judgment" that (though it does not bind the ALJ) must be "received into the record as expert opinion evidence and given appropriate weight" (Social Security Ruling ("SSR") 83–19 at 104, 106–07).

Reg. § 404.1526(a) sets out the method used for determining equivalence:

We will decide that your impairment(s) is medically equivalent to a listed impairment in Appendix 1 if the medical findings are at least equal in severity and duration to the listed findings. We will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment. If your impairment is not listed, we will consider the listed impairment most like your impairment to decide whether your impairment is medically equal. If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs, and laboratory findings about your impairments to determine whether the combination of your impairments is medically equal to any listed impairment..

When equivalency determinations must be based on more than one impairment, SSR 83–19 at 106 cautions:

The mere accumulation of a number of impairments also will not establish medical equivalence. When an individual suffers from a combination of unrelated impairments, the medical findings of the combined impairments will be compared to the findings of the listed impairment most similar to the individual's most severe impairment. The functional consequences of the impairments (i.e., RFC [this is the "residual functional capacity" spoken of in steps 4 and 5 of the wage earner analysis]), irrespective of their nature or extent, cannot justify a determination of equivalence.

In all events, Secretary's decision must be upheld unless (1) the findings are not supported by substantial evidence or (2) Secretary has applied incorrect legal standards (Section 405(g)). *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938), has defined "substantial evidence" as:

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

### *ALJ Drzewiecki's Decisions*

Examining Georgevitch's medical problems under Section 423(d)(2)(A) in Opinion I, ALJ Drzewiecki found Georgevitch to be a disabled wage earner (R. 16):

In addition to the claimant's problem with her right shoulder, she also has limitations on the use of her lower extremities and she has difficulty standing and walking for prolonged periods. In addition, the claimant has a history of bronchitis and shortness of breath which further reduce her functional capacity (Exhibit 34). Obviously, as a result of the claimant's combined impairments, she is unable to perform even sedentary work on a sustained basis. Her lower extremity difficulties prevent her from standing or walking for six to eight hours per day. Her frozen right shoulder prevents her from lifting even 10 pounds on a regular basis and she cannot manipulate objects with her hands for a full workday. Since the claimant cannot perform even sedentary work, she cannot do her past relevant job or any other jobs existing in significant numbers in the national economy and she has been disabled since July 3, 1984.

Despite that finding, ALJ's Opinion II determined Georgevitch was not "disabled" within the meaning of Section 423(d)(2)(B) and therefore denied her widow's insurance benefits.

In Opinion II ALJ Drzewiecki first concluded Georgevitch's right shoulder impairment (R. 11) "does not meet or equal the severity required by . . . the Listing of Impairments in Appendix 1 . . ." because Georgevitch "retains the use of her left upper extremity and she still has partial use of her right upper extremity despite her tendinous cuff injury." Georgevitch has no quarrel with that ruling.

However, ALJ Drzewiecki went on to find (without any stated analysis) (R. 11):

Nor do [Georgevitch's] other impairments, in combination with her right shoulder injury, equal in severity any of the listed impairments. Although [Georgevitch] does have some residuals from an automobile accident in 1983 which affected her lower extremties (sic), she can stand or walk for short distances without assistance and her combined impairments are not severe enough to prevent the performance of any gainful activity.

Georgevitch Mem. 6–9 asks this Court to reverse the ALJ by finding Georgevitch's impairments—either singly or in combination—are equivalent to five Appendix 1 impairments (described in App. 1 §§ 1.03, 1.05, 1.13, 3.00 and 8.00, respectively).

To make such a finding this Court would have to assemble the medical findings (symptoms, signs and laboratory findings) of Georgevitch's impairments and, by a particularized technical comparison, determine whether or not they are equal in severity to the detailed set of medical findings for any of the five listed impairments (SSR 83–19 at 106). That is something no one—not a physician, the ALJ or even Georgevitch herself [9]—has ever done.

Even were it appropriate for this Court to examine the equivalence question in the first instance (it is not, for this Court's role is of course to *review* an ALJ's analysis, not to perform it for him or her), it could not do so absent physician reports or even legible medical records. Examination of Georgevitch's administrative record makes it quite clear the determination of whether she is disabled has been focused almost entirely on her right shoulder injury. None of her other impairments have been evaluated by doctors (indeed there are not even complete or legible medical records of the treatments administered) to determine whether—when considered singly or in combination—they render Georgevitch disabled under Section 423(d)(2)(B).

Yet there is no doubt those other impairments are both real and substantial. ALJ Drzewiecki obviously credited Georgevitch's complaints of other medical problems (specifically her shortness of breath, bronchitis, limitations on use of her lower extremities and difficulties in prolonged standing and walking) and, in Opinion I (R. 16), found them sufficiently serious to preclude her from even sedentary work.

*Miller v. Heckler*, 756 F.2d 679, 680–81 (8th Cir.1985) (per curiam) (footnotes omitted) involved a very similar set of facts and explained why a remand is appropriate under such circumstances:

In this case we find that the Secretary failed to develop evidence from appellant's treating sources as to her mental and physical impairments. Although appellant has been under treatment since 1974 for a mental impairment at the Western Missouri Mental Health Center, the record contains nothing more than handwritten entries, which are in large part illegible

---

9. Georgevitch Mem. 5–7 avoids such analysis by simply (1) setting out the detailed medical findings for the five listed Appendix 1 impairments (in a little over one page), (2) reiterating Georgevitch's medical problems (in a long paragraph) and (3) then concluding:

Based on the above, the medical evidence of record did establish that [Georgevitch] had impairments with medical findings, when considered separately, had specific clinical findings that are the same as those listed in

Appemdix (sic) 1. . . . The elements required by the Appendix have been met if the medical evidence of six doctors is considered.

Such an ipse dixit cannot do the job, and it is far too late for this Court to go back to medical school (see Judge Easterbrook's opinion in *Sparks v. Bowen*, 807 F.2d 616, 617 (7th Cir. 1986) for a like reaction to the perils of judicial review in this field: "The administrative law judge's opinion is stuffed with medical jargon that sent us scurrying to the dictionaries").

"either because of the poor quality of the reproduction, the handwriting of the physician, or both." *Cutler v. Weinberger,* 516 F.2d 1282, 1285 (2nd Cir.1975). The court stated in *Cutler:* "Under the circumstances this court has no way to determine whether the Secretary fully understood some of the medical reports before him. Where the medical records are crucial to the plaintiff's claim, illegibility of important evidentiary material has been held to warrant a remand for clarification and supplementation." *Id.* Such is the case here. On remand, we suggest to the Secretary that if it is "important that the medical evidence specifically focus on the Secretary's 'Listing of Impairments,' fairness require[s] that [the Secretary] submit the interrogatories designed for this purpose to the claimant's [treating] physician as well [as to the Secretary's physician]." *Woodard v. Schweiker,* 668 F.2d 370, 374 (8th Cir. 1981). It is "incumbent on the ALJ to give both side's doctors an opportunity to specifically address the key question at issue." *Id.*

See also *Williams v. Bowen,* 636 F.Supp. 699, 703–04 (N.D.Ill.1986).

*Miller's* language translates directly into this case. It is plain Georgevitch is being treated for some serious medical problems over and above her right shoulder injury. No informed decision as to whether those problems (singly or in combination) equal an Appendix 1 impairment could possibly have been made on the basis of the collection of illegible medical notes contained in the administrative record.

As in *Miller,* this case must be remanded to Secretary with instructions to obtain:

---

10. Section 423(d)(5)(B) imposes that obligation on Secretary:

    In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Secretary shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the indi-

1. complete and legible medical records as to Georgevitch's impairments; [10] and

2. medical opinions as to whether those impairments, when considered singly or in combination, are equivalent to one or more Appendix 1 impairments.

Only then can the ALJ properly make his ultimate finding whether a listed impairment has been met or equaled, a finding then subject to judicial review under the substantial evidence standard.

### Conclusion

Both parties' motions for summary judgment are denied. Secretary's decision is vacated, and this case is remanded for further proceedings consistent with this opinion.

---

vidual is not under a disability. In making any determination the Secretary shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.