**Alma M. TURNER, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary, Dept. of Health and Human Services, Defendant.**

**Civ. A. No. 88–1750.**

United States District Court, District of Columbia.

June 6, 1990.

Matthew Weaver Steele Estes, Washington, D.C., for plaintiff.

Susan A. Nellor, Asst. U.S. Atty., Washington, D.C., for defendant.

MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff Alma M. Turner brings this action seeking review of a final decision of the defendant, Secretary of Health and Human Services, denying plaintiff's request for reconsideration of a determination of overpayment of disability benefits under Title II of the Social Security Act, 42 U.S.C. 401 *et seq.* or, in the alternative, plaintiff's request for a waiver of recovery of the alleged overpayment. Before the Court are plaintiff's motion for judgment of reversal and defendant's motion for judgment of affirmance of the Secretary's decision.

For the reasons stated below, we find that the Secretary's determination of an overpayment of benefits to plaintiff is correct and that the Secretary's failure to find that plaintiff was without fault in causing the overpayment and subsequent denial of waiver of recovery of the overpayment on that basis, is supported by substantial evidence. We therefore deny plaintiff's motion for judgment of reversal and grant defendant's motion for judgment of affirmance of the Secretary's decision.

I. *Procedural History* *

Plaintiff was first determined to be eligible for Disability Insurance Benefits ("disability benefits") pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.,* as of May 15, 1978. Defendant does not dispute this determination of plaintiff's eligibility for disability benefits. At the time of the filing of this action, plaintiff was 65 years old. She has a tenth grade education and has worked primarily as a food server and waitress.

Beginning in February 1979, and continuing through March 1984, plaintiff worked part-time at Group Counseling Service, Inc., ("GCS"), an alcohol rehabilitation center, preparing and serving food for three hours a day on weekends.[1] Plaintiff did not report this work activity to the Social Security Administration ("SSA"), erroneously interpreting her employer as stating that she could work part-time without jeopardizing her disability benefits. This advice was contrary to the statement on plaintiff's original application form which she completed and signed in July 1978 that she "MUST NOTIFY THE SOCIAL SECURITY ADMINISTRATION PROMPTLY IF YOU GO TO WORK whether as an employee or a self-employed person." On April 6, 1984, five years after beginning her work as a waitress, plaintiff was notified by SSA that, because of her employment, her entitlement to disability benefits ceased in November 1979.[2] Plaintiff did not submit any evidence to the SSA and her disability benefits were suspended.[3]

Shortly thereafter, plaintiff ceased working and on April 17, 1984, filed a new application for disability benefits. On July 13, 1984, plaintiff also applied for Supplemental Security Income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* ("SSI benefits"). Both applications were originally denied. On October 18, 1985, following a hearing, an Administrative Law Judge ("ALJ"),

* A useful chronology of much of the facts has been helpfully supplied by government counsel and is attached hereto. Government's Reply, Attachment.

1. Plaintiff's earnings per month averaged $306.82 in 1979, $362.50 in 1980, $402.17 in 1981, $290.72 in 1982, $320.92 in 1983 and $240.72 for the first three months of 1984.

2. Plaintiff claims to have been confused by this notice concerning a trial work period, thinking that it permitted her to work part-time while receiving disability benefits.

3. The overpayment period in this case is March, 1980 through March, 1984, the period of plaintiff's employment with Group Counseling Ser-

vice, Inc., following the completion of her trial work period. A trial work period allows a recipient of disability benefits to test her ability to work. Work performed during this time will not be considered as showing that disability has ended until the recipient performs services for nine months. 20 C.F.R. § 404.1592. Although plaintiff began work in February, 1979, the start of her trial work period was considered by SSA to be March, 1979. Plaintiff's impairments were thus considered no longer disabling in December, 1979, the first month of work after the end of the trial period, and her benefits were terminated as of March, 1980, the third month following the month in which her impairments were no longer disabling. 20 C.F.R. §§ 404.316(b) and 404.325.

found that plaintiff was disabled and again entitled to disability benefits as of April 14, 1984, and SSI benefits as of July 13, 1984. This finding of entitlement to disability benefits is not challenged.

On January 13, 1986, the SSA made a final determination that plaintiff had been able to perform substantial and gainful work in the time period 1979–1984. The SSA sent plaintiff an award certificate implementing the decision to award renewed disability and SSI benefits but notifying her of a determination of overpayment for the period between 1980 and 1984. However, the SSA omitted from the award certificate the reason and the amount of the alleged overpayment. A revised notice was sent to plaintiff on March 17, 1986, notifying her that she had been overpaid $16,000 for the period between March 1980 and March 1984, and that the benefits due her through December 1985, as a result of the reinstatement of benefits, were being adjusted or "netted" to reduce the amount of her overpayment, as provided in 20 C.F.R. § 404.502.[4]

On February 27, 1986, plaintiff requested a waiver of recovery of the overpayment, documenting the financial difficulties caused by the termination of her disability benefits in 1984. On April 21, 1986, plaintiff requested reconsideration of the determination of overpayment.[5]

On May 26, 1987, following a hearing, the ALJ found that plaintiff was not entitled to disability benefits during the disputed period and that she had been overpaid. However, the ALJ found that plaintiff was without fault in causing the overpayment. In addition, the ALJ found that the partial recovery of plaintiff's overpayment which had already occurred was proper and plaintiff was not entitled to the recovery of the "approximately $6,000"[6] underpayment of her benefits, deducted by the SSA from plaintiff's second award of disability and SSI benefit payments. The ALJ did determine that plaintiff was entitled to a waiver of future recovery of the remainder of the overpayment since plaintiff was without fault in causing the overpayment and recovery would cause a hardship for her. (R. at 23–24). *See* Act 204(b); 42 U.S.C. § 404(b) (1982 Ed.).

On February 17, 1988, the Appeals Council granted plaintiff's request for review of the ALJ's decision. The Appeals Council reviewed the entire case pursuant to 20 C.F.R. § 404.976. Plaintiff had sought review by the Appeals Council of the ALJ's decision that plaintiff was not entitled to recovery of the amount already "netted" or withheld. Instead, in a final decision issued May 2, 1988, the Appeals Council found that the ALJ had made an error of law, reversed the ALJ's finding that plaintiff had been without fault for causing the overpayment and denied plaintiff a waiver of its recovery in its entirety.

Plaintiff, having exhausted her administrative remedies, filed the present suit, seeking a reversal of the final agency decision of overpayment, the finding of fault, and the denial of waiver of recovery of the overpayment.

## II. *Discussion*

### A. Contentions of the Parties

As an initial matter, the parties differ as to the exact nature of the issues before the Court for review. Plaintiff would have this Court 1) reverse the SSA's determination of overpayment of benefits to plaintiff for

---

**4.** 20 C.F.R. § 404.502(a)(1) states, in pertinent part, that:

> If the individual to whom an overpayment was made is at the time of a determination of such overpayment entitled to a monthly benefit or a lump sum under Title II of the Act, or at any time thereafter becomes so entitled, no benefit for any month and no lump sum is payable to such individual, except as provided in paragraphs (c) and (d) of this section, until an amount equal to the amount of the overpayment has been withheld or refunded.

**5.** Defendant argues that plaintiff waived her right to challenge the determination of overpayment by her failure to seek timely review.

**6.** Plaintiff claims that the actual amount of the underpayment was $8,856.70. This figure is the total of unpaid benefit amounts for 1984 ($2,873.70), 1985 ($4,459.00) and 1986 ($1,526.00). (R. at 322.)

the time period in dispute; if we decline to do so, then 2) declare unlawful the netting of underpayments to plaintiff with the claimed overpayments; 3) hold that the Appeals Council abused its scope of review when it reversed the ALJ's finding that plaintiff was without fault in causing the overpayment; and finally, 4) find that the Appeals Council's finding of fault and denial of waiver of overpayment is not supported by substantial evidence.

In contrast, the defendant asserts that plaintiff waived the right to reconsideration of the determination of overpayment by her failure to make a timely request for administrative review. Consequently, defendant argues that only the final decision of the Secretary is subject to judicial review under 42 U.S.C. § 405(g). Since the Secretary has clearly delegated the duty of making final decisions to the Appeals Council, defendant contends that we must review only the decision of the Appeals Council, not that of the ALJ, to determine whether substantial evidence supports the Secretary's decision. Thus, defendant argues, the only issue before the Court for review is whether the Appeals Council decision, as the final decision of the Secretary, that the ALJ had made an error of law in finding plaintiff without fault and granting a partial waiver of recovery of the overpayment, is supported by substantial evidence. We will deal with each of these questions in turn.

### B. Scope of Review

■ It is not disputed that the Secretary delegated his power of review to the Appeals Council, whose decision, not that of the Administrative Law Judge, is subject to judicial review. Much of plaintiff's argument ignores this distinction.

■ In reviewing an agency's action, in this case, that of the Secretary speaking through the Appeals Council, "deference is to be afforded the administrative decision and it is not for the trial court to review *de novo* the Secretary's final decision as to findings of fact and the reasonable inferences to be drawn therefrom." *Reyes v. Secretary of Health, Education and Wel-*

*fare*, 476 F.2d 910, 914 (D.C.Cir.1973). The Court's inquiry is limited to whether the Secretary's final decision is supported by substantial evidence and untainted by an error of law. *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C.Cir.1987) (citing *Brown v. Bowen*, 794 F.2d 703, 705 (D.C.Cir.1986)). It is not our function to substitute our judgment for that of the agency.

■ If substantial evidence exists, then the Secretary's fact finding is conclusive and his decision must be affirmed. 42 U.S.C. §§ 405(g) and 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L:Ed.2d 842 (1971). Substantial evidence is considered to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Beasley v. Bowen*, 693 F.Supp. 1216, 1219 (D.D.C.1988). The evidence provided clearly must be "more than a mere scintilla." *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427, but not "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

The Court is not, however, to merely act as a "rubberstamp" to the administrative decision. *Davis v. Heckler*, 566 F.Supp. 1193 (D.D.C.1983). Rather, this standard of review "calls for careful scrutiny of the entire record," *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C.Cir.1989) (quoting *Brown*, 794 F.2d at 705). The Court must determine whether the Secretary, acting through the Appeals Council and ALJ, has "analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative exhibits," *Simms*, 877 F.2d at 1050 (quoting *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3rd Cir. 1983)). With these standards in mind, we proceed.

### C. Statutory Framework

Disability benefits may be terminated because of a return to employment under 42 U.S.C. § 422(c)(4), if a claimant has engaged in Substantial Gainful Activity. Un-

der the SSA regulations, a claimant is entitled to a nine month trial work period before benefits are terminated. *Id.* If a person previously found to be disabled earns between $190 and $300 a month, the SSA looks to the amount of the earnings, the type of activity, the individual performance and the medical evidence relating to the impairment to determine if the employment is Substantial Gainful Activity. 20 C.F.R. § 404.1574(b)(2) (1987).

Section 204 of the Social Security Act, 42 U.S.C. § 404, authorizes the Secretary to recover any overpayment of disability benefits granted under Title II of the Act.

> Whenever the Secretary finds that more or less than the correct amount of benefits has been paid with respect to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Secretary.

42 U.S.C. § 404(a).

It cannot be seriously questioned that plaintiff's employment was Substantial Gainful Activity.

### 1. *Finding of Fault and Waiver of Overpayment*

■ The Secretary's authority to waive recovery is not unlimited. The Social Security Act permits the waiver of recovery of overpayment under certain circumstances. There is a two part test which must be met for such a waiver: 1) the claimant must be without fault, and 2) recovery must either be against the purpose of the Act or against equity and good conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506. *Peterson v. U.S. Railroad Retirement Bd.*, 780 F.2d 1361 at 1363 (8th Cir.1985); *Davis v. Bowen*, 840 F.2d 822, 824 (11th Cir.1988).

■ The Appeals Council found that the ALJ made an error of law in finding plaintiff without fault in causing the overpayment, and that therefore recovery could not be waived. (R. 8) An individual who receives an overpayment is "at fault" for this purpose if the overpayment results from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507(b).

In determining whether an individual is at fault, the SSA is required to consider "all pertinent circumstances, including his age, intelligence, education, and physical and mental condition." 20 C.F.R. § 404.507. Defendant asserts that plaintiff was at fault for failing to report her work activity during 1979–1984, information which she "knew or should have known to be material," and the ALJ made an error of law in finding the plaintiff without fault. Plaintiff contends that the Appeals Council improperly reviewed the ALJ's decision and urges this Court to review the ALJ's finding that plaintiff was without fault pursuant to the above standard of review.

It is the defendant's position that only the Appeals Council decision is the final decision of the Secretary and thus subject to our review, without reference to the ALJ hearing decision. *See* 20 C.F.R. §§ 404.967 and 404.979 (Appeals Council may grant plaintiff's request for review and issue its own decision modifying or reversing hearing decision.) We agree.

As stated previously, the Social Security Act provides that federal courts may only review the Secretary's "final decision," and that judicial review of the Secretary's findings of fact is limited to determining whether these findings are supported by substantial evidence. 42 U.S.C. § 405(g). Pursuant to his rulemaking authority under 42 U.S.C. § 405(a), the Secretary has delegated the duty of making "final decisions" to the Appeals Council. *See* 20 C.F.R. § 404.900. Therefore, defendant argues that we are confined to a review of the findings of the Appeals Council. We note that "[c]ourts do not normally review the interim actions of ALJs and lower

agency officials. Rather they review final agency decisions." *Morris v. Sullivan*, 897 F.2d 553, 559 (D.C.Cir.1990); *see, e.g., Fierro v. Bowen*, 798 F.2d 1351 (10th Cir. 1986), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 789 (1987); *Deters v. Secretary of Health, Education and Welfare*, 789 F.2d 1181 (5th Cir.1986); *Kellough v. Heckler*, 785 F.2d 1147 (4th Cir.1986).

In examining whether the Appeals Council's determination that plaintiff was at fault and therefore not entitled to a waiver of overpayments, we are aware that that decision reversed the ALJ's determination that plaintiff had been without fault for causing the overpayment and his resulting waiver of the uncollected portion of the overpayment. Nevertheless, it is the decision of the Appeals Council which is subject to judicial review. Based on such review, we are satisfied that the decision of the Appeals Council is supported by substantial evidence.

### 2. *Netting of Overpayment and Underpayment*

■ The only remaining issue of substance concerns the netting of overpayments and underpayments.[7] Plaintiff asserts that the SSA unlawfully netted underpayments of plaintiff's renewed benefits with the alleged overpayment. In a recent decision, *Sullivan v. Everhart*, — U.S. ——, 110 S.Ct. 960, 108 L.Ed.2d 72 (1990), the Supreme Court addressed most of these issues when it considered the validity of the "netting" regulations promulgated by the Secretary pursuant to his authority. Under these regulations, the Secretary, as in this case, calculates the difference between past underpayment and past overpayment to an individual, then "nets" or sets off one against the other. The challenged regulation provides:

> The amount of an underpayment or overpayment is the difference between the amount paid to a recipient and the amount of payment actually due such

recipient for a given period. An overpayment or underpayment period begins with the first month for which there is a difference between the amount paid and the amount actually due for that month. The period ends with the month the initial determination of overpayment or underpayment is made.

20 C.F.R. § 416.538 (1989).

However, the Act further provides:

> In any case in which more than the correct amount of payment has been made, there shall be no adjustments of payment to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

Act 204(b); 42 U.S.C. § 404(b) (1982 Ed.).

First, plaintiff argues that the Secretary's netting of her alleged overpayment and underpayment was a violation of the latter regulation. Similarly, the challenge to the Secretary's interpretation of the regulations in *Everhart* asserted that the netting of payments by the Secretary constituted an "adjustment" or "recovery", thus triggering the requirement of compliance with the restrictions imposed by § 204(b). *Id.* 110 S.Ct. at 965; *See Califano v. Yamasaki*, 442 U.S. 682, 697, 99 S.Ct. 2545, 2555, 61 L.Ed.2d 176 (1979) (the limitation on adjustment or recovery of overpayment in § 204(b) gives recipients the right to an oral hearing on waiver of recoupment.) The Secretary defines the terms more narrowly, contending that when the agency nets an underpayment against an overpayment, it is not engaged in "adjustment or recovery," but only "in the calculation of whether 'more or less than the correct amount of payment has been made.'" *Everhart*, 110 S.Ct. at 966. Only after making the calculation of the proper amount of payment by netting does the Secretary take what is considered the "ad-

---

7. The regulations concerning SSI benefits authorize the Secretary to determine whether "more or less than the correct amount of benefits has been paid." 42 U.S.C. § 1383(b)(1)(A) (1982 Ed., Supp. IV). The Secretary is authorized to "make rules and regulations and establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions." Act § 205(a), 42 U.S.C. § 405(a) (1982 Ed.); *see also* Act § 1631(d)(1), 42 U.S.C. § 1383(d)(1) (1982 Ed., Supp. IV).

ditional step of rectifying any error by 'adjustment' (increasing or decreasing future payments) or 'recovery' (obtaining a refund from the beneficiary), *id.*, triggering the requirements of § 204(b). The Supreme Court held that the Secretary's reading of the regulation, while not an "inevitable interpretation of the statute; ... is assuredly a permissible one." *Id.* According to *Everhart*, the Act "reasonably bears the Secretary's interpretation that netting is permitted." *Id.*

Second, plaintiff argues that the netting of her alleged overpayment with underpayment of her renewed benefits was in violation of the regulations because the underpayment and overpayment occurred in two distinct periods. In *Everhart*, a similar challenge was raised. Upon consideration of the Secretary's method of defining the period during which netting may occur, the Court "found no basis for holding the regulations arbitrary and capricious." *Id.* at 967. Overpayments are netted with underpayments up to the "month [of] the initial determination" of error. 20 CFR § 416.538 (1989). According to *Everhart*, the "initial determination" is a "term of art meaning the Secretary's formal determination that an error was committed." *Id.* at 966; *see* 20 CFR §§ 404.902, 416.1402 (1989). The Court dismissed the allegation that the Secretary might deliberately delay the formal initial determination date in order to net in additional underpayments, thus reducing the amount of overpayment subject to the recovery-waiver procedures, recognizing that "delay [of the initial determination] is inevitable." *Id.*

Plaintiff argues that the netting period applied to underpayment of her renewed benefits was improper. In support, plaintiff asserts that the claimed overpayment period began in February, 1980, the date the SSA determined plaintiff's benefits should have been terminated, and ended on April 6, 1984, the alleged date when the SSA made its initial determination that

plaintiff had been overpaid. Plaintiff's Motion for Judgment at 14. Since the underpayment period began on April 14, 1984 with respect to the disability benefits and on July 13, 1984 for the SSI benefits, as a result of the renewed finding of eligibility, plaintiff contends that the overpayment and underpayment took place in two different periods, resulting in an improper netting. Plaintiff is mistaken.

The Appeals Council accurately noted that plaintiff's overpayment period ended not in April 1984 but in January 1986, the month the initial determination of overpayment was made. (R. at 438). The April 1984 notice referred to by plaintiff was not a final determination by the Secretary, but only notified plaintiff that the Secretary was preparing to make a final determination and gave her an opportunity to submit evidence before a determination was made. Therefore, the overpayment period was between March 1980 and the date of the initial determination, January 1986. (R. at 344–348). Thus, the disability benefit payments due plaintiff as a result of the October 1985 decision awarding her renewed benefits between April 1984 and January 1986, were properly netted against the previous overpayment, in accordance with the relevant regulations and *Everhart*.

3. *The Appeals Council's Rejection of the ALJ's Conflicting Findings Respecting Plaintiff's Entitlement to Overpayments*

■ The ALJ properly found that plaintiff was not entitled to disability benefits for the time period between 1980 and 1984 and thus had been overpaid. (R. at 24). In addition, the ALJ held that plaintiff was not entitled to the recovery of the "approximately $6000"[8] underpayment of her benefits, *id.*, previously deducted through the SSA's netting of the claimed overpayment amounts from the renewed disability and SSI benefits awarded plaintiff in 1984.[9] However, he also found that plaintiff was

---

8. The actual amount of underpayment, according to plaintiff, is $8,856.70.

9. We note that, as a result of the netting of underpayments and overpayments by the SSA,

plaintiff did not receive any of the renewed benefit payments to which she would be entitled from April 1984 to January 1986. (R. at 321–23).

not at fault in causing the overpayment and waived future recovery of the remainder, finding that further repayment would cause a hardship for her. (R. at 24–25).[10] Although reference is made to the ALJ's apparently conflicting findings of the financial hardship caused by past and future recovery of the overpayment, after reviewing the financial documentation, he determined that plaintiff's financial condition warranted waiver of future recovery of the remaining overpayment amount.[11]

Plaintiff had sought review by the Appeals Council of the ALJ's decision that plaintiff was not entitled to recovery of the amount already withheld. The Appeals Council reviewed the entire case pursuant to 20 C.F.R. § 404.976, reversed the ALJ's finding of no fault and denied plaintiff any waiver of recovery. Plaintiff argues that the review by the Appeals Council was improper.

The Appeals Council may only review a decision of an ALJ if it finds that one of the four specified conditions exist. 20 C.F.R. § 404.970(a).[12] In the instant case, the Appeals Council relied on 20 C.F.R. § 404.970(a)(2) to reverse the ALJ's decision that plaintiff was without fault. Under section 404.970(a)(2) the Appeals Council will review an ALJ's decision if there is an error of law. The Appeals Council held that the ALJ made an error of law when he concluded that a notice plaintiff received in 1984 concerning the trial work period was misleading, thus confusing plaintiff and leading her to believe that she could continue to receive benefits while working part-time. (R. at 110). The Appeals Council pointed out that the 1984 notice was re-

ceived by the plaintiff after the period when she should have been reporting her income. According to the Appeals Council, the ALJ's reliance on evidence which was not relevant to plaintiff's understanding of her reporting duties during the period she was working was legal error.

The Appeals Council apparently based its reversal of the ALJ's finding that plaintiff was without fault on the existence of the language in the application apprising plaintiff of her responsibility to report work activity contained in plaintiff's application for benefits and a form letter sent to her in December 1980. The Appeals Council dismissed plaintiff's contention that her employer had informed her of her continued right to benefits despite her work activity, asserting that plaintiff "should have resolved any doubt in favor of contacting the Social Security Administration." Defendant's Motion at 7. Every application contains the same language.

The ALJ undertook a comprehensive examination of plaintiff's credibility and the special circumstances testified to by plaintiff when rendering his decision. (R. at 24). The ALJ's decision not to waive the past recovery was apparently based on his conclusory determination that such recovery would not defeat the purpose of Title II. *Id.* His decision to waive future recovery was based in part on evidence that plaintiff's monthly expenses are approximately $950, while her monthly income, including all benefits, totals approximately $1,000. (R. at 23, 24).

However, it is not our role to weigh the evidence presented, *Beasley v. Bowen,* 693 F.Supp. 1216, 1221 (D.D.C.1988) before the

---

**10.** Plaintiff documented her financial condition as a result of the termination of her disability benefits in 1984. This documentation showed that plaintiff was past due on payment of her rent (R. at 355, 359), her gas bill (R. at 357), electric bill (R. at 358), and medical bills (R. at 356, 362).

**11.** Recovery would "defeat the purpose of Title II" if it "would deprive a person of income required for ordinary and necessary living expenses." 20 C.F.R. § 404.508(a). Specifically, 20 C.F.R. §§ 404.508(a)(1) and (2) provide that the purposes of Title II are defeated if recovery of an overpayment would prevent an individual

from meeting "[f]ixed living expenses, such as ... rent ... utilities [and] [m]edical, hospitalization, and other similar expenses."

**12.** 20 C.F.R. § 404.970(a) provides:
The Appeals Council will review a case if—
(1) There appears to be an abuse of discretion by the administrative law judge;
(2) There is an error of law;
(3) The action, findings or conclusions of the administrative law judge are not supported by substantial evidence; or
(4) There is a broad policy or procedural issue that may affect the general public interest.

ALJ, nor may we replace the Secretary's judgment concerning the weight and validity of the evidence with our own. *Davis v. Heckler,* 566 F.Supp. 1193, 1195 (D.D.C. 1983); *Di Benedetto v. Secretary of the Department of Health and Human Services,* 518 F.Supp. 786, 787 (D.D.C.1981). We therefore find that the Appeals Council's decision that the ALJ had made an error of law is supported by substantial evidence.

Accordingly, we hold that the Secretary's determination that plaintiff received an overpayment for the period between 1980 and 1986 is supported by substantial evidence and further find that the Secretary's netting of plaintiff's overpayments and underpayments was entirely proper and within the netting period as defined in *Everhart.* In addition, we hold that the Appeals Council did not abuse its authority when it reviewed the entire case pursuant to 20 C.F.R. § 404.976. Finally, we find that the Secretary's decision that plaintiff was at fault in causing the overpayment is supported by substantial evidence. Consequently, we deny plaintiff's motion for judgment of reversal and grant defendant's motion for judgment of affirmance.

An order consistent with the foregoing has been entered this day.

## CHRONOLOGY

July 13, 1978 Plaintiff applies for disability insurance benefits (Tr. 100–103).

September 28, 1978 Plaintiff's claim for benefits was granted. The onset of her disability is January 31, 1977.

May 10, 1979 The onset date is later revised to May 15, 1978 (Tr. 104–106).

February 1979 Plaintiff begins working at Group Counseling Service, Inc. She will continue to work there in every month through March 1984 (Tr. 134–139). She will not report this work activity to the Social Security Administration ("SSA"). Her trial work period of nine months begins in February 1979 and ends October 1980 (Tr. 110).

December 19, 1980 Notice to plaintiff reminding her to report her return to work or any other change in her work status (Tr. 109).

April 6, 1984 SSA notifies plaintiff that it appears that she regained the ability to perform substantial gainful activity in November 1979, and that as a result, her benefits should have been terminated in February 1980. This is not a formal determination; the notice gives plaintiff the opportunity to submit evidence before a formal initial determination is made (Tr. 110).

April 17, 1984 Plaintiff files another application for disability insurance benefits (Tr. 97, 111–114).

July 13, 1984 Plaintiff files an application for supplemental security income. This application was not available for inclusion in the record.

October 18, 1985 An Administrative Law Judge finds that plaintiff is disabled based on her April and July 1984 benefits applications (Tr. 309–316). The onset of her disability is April 14, 1984. The Administrative Law Judge notes that no formal determination of whether plaintiff regained the ability to do substantial gainful activity in November 1979 has yet issued (Tr. 309–316, *see especially* Tr. 312, 315).

January 13, 1986 SSA sends plaintiff an "award certificate" (Tr. 344–348). Plaintiff was notified of the decision that she had been overpaid and was further informed of her rights with respect to the overpayment and its recovery.

March 17, 1986 Revised notice sent to plaintiff informing her of the amount of benefits she will receive by reason of her being found disabled by the October 1985 Administrative Law Judge decision. It informs her that she was overpaid between March 1980 and March 1984. Finally, it informs her that benefits due her through December 1985 by reason of the October 1985 Administrative Law Judge's decision have been applied to reduce the amount of her overpayment. This notice is the formal initial determination regarding the fact and amount of plaintiff's overpayment and the amount of benefits she is to receive based on her 1984 claims for benefits. It apprises her

that if she disagrees in any way with the determination, she may request reconsideration (Tr. 364).

March 19, 1986 Rather than requesting reconsideration of the determination that she was overpaid and the amount of benefits due her, plaintiff requests that recovery of the·overpayment be waived by SSA (Tr. 365–368).

February 17, 1987 Appeals Council grants plaintiff's request for review of the Administrative Law Judge's decision. Appeals Council noted that overpayment began in March 1980 and ended in January 1986 (Tr. 438).

May 2, 1988 In the final reviewable decision of the Secretary in this matter, the Appeals Council determines that recovery of plaintiff's overpayment cannot be waived because plaintiff was at fault in causing that overpayment (Tr. 5–8).